WIDEMAN, PLAINTIFF-APPELLANT, *v.* YOUNG, ADMR., BUREAU OF WORKMEN'S COMPENSATION ET, DEFENDANTS-APPELLEES.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25652.   Decided December 21, 1961.

*Messrs. Fleck & Fleck,* for plaintiff-appellant.
*Mr. Mark McElroy,* attorney general, *Mr. Michael P. O'Brien,* asst. attorney general, and *Mr. Owen J. McCafferty,* for defendants-appellees.

(RADCLIFF, P. J., COLLIER and BROWN, JJ., of the Fourth Appellate District, sitting by designation in the Eighth Appellate District.)

*Per Curiam.* This is an appeal from a directed verdict of the Common Pleas Court of Cuyahoga County, Ohio, resulting in judgment for appellees.

The only assignment of error listed is that the trial judge erred in directing a verdict for the appellees.

Appellant was an employee of the Allyn-Ryan Division of the Superior Foundry, and while in the course of such employment allegedly sustained an injury while shoveling sand into a mold. He filed his claim with the Industrial Commission which, upon hearing before the Deputy Administrator of the Workmen's Compensation Bureau, was denied. He next filed for reconsideration before the Deputy Administrator, which was also denied. He then perfected his appeal to the Regional Board of Review and to the Industrial Commission of Ohio where, in both instances, the action of the administrator was affirmed. From the final order of disallowance, appellant filed his notice of appeal and petition to the Court of Common Pleas of Cuyahoga County. From the above judgment of that court this appeal was taken.

The testimony of appellant concerning the event resulting in the alleged injury is as follows, beginning on Page 15 of the Bill of Exceptions.

"A. I was standing about like this. My machine set here. The sand pile was here. I reach in to get the sand to put it in the flask over here, and when I reached back to get another shovel of sand, my foot slipped. As I started up, the catch caught in my back.

"Q. The catch caught in your back?

"A. Yes.

"Q. First your foot slipped?

"THE COURT. Was that before you shoveled the second shovel?

"THE WITNESS. Yes.

"Q. That is when you had the first shovel?

"A. I don't know whether it was the first shovel. I was shoveling the sand and filling the flask, and when I get another shovel of sand, my foot slipped and the catch caught in the back, and I had to let the shovel go, and I caught onto the machine, held onto it until I could pull myself together and straighten up.

"Q. To take it slowly, you filled the shovel with sand, and then you swung it in this direction?

"A. That's right.

"Q. Then you threw that shovelful of sand how long a distance, about?

"A. Till I fill the flask up.

"Q. How far, two or three feet away?

"A. No, it's not quite that far.

"Q. Then you emptied the shovel?

"A. That's right.

"Q. Then you would reach back to get another shovelful?

"A. That's correct.

"Q. And what happened as you were reaching back?

"A. As I was reaching back, I stepped like that to get the shovel of sand, like that, and start it up then. That's when I caught the catch in my back.

"Q. You just started up. You were getting another shovel?

"A. Yes.

"Q. But you hadn't lifted it?

"A. Hadn't lifted it up. As I started up with the shovel, that's when the catch caught me.

"Q. You hadn't lifted the shovel up, but at that time you got the catch in the back?

"A. When I lift the shovel, I caught the catch in my back, when I started up with the shovel.

"Q. Just a moment ago you said you hadn't filled the shovel at the time. Did you have this shovelful of sand, that you are just describing, or were you just dipping in to get a shovelful of sand?

"A. Just as I went to get the shovel of sand, my foot slipped, and I got the shovel of sand and started up with it, and my back caught then.

"Q. Your back caught then?

"A. Yes.

"THE COURT. Do I understand your foot slipped before you got the sand on the shovel?

"THE WITNESS. That's right.

"Q. Your foot slipped before you got the sand on your shovel?

"A. Yes.

"Q. Your shovelful of sand?

"THE COURT. Then after you got the shovel on the sand, you started to lift it up?

"THE WITNESS. That's when I started to lift it up.

"THE COURT. That's when you felt the pain in your back?

"THE WITNESS. That's when I felt the pain in my back.

"Q. You didn't feel it when your foot slipped?

"THE WITNESS. I was feeling the pain all the time, but it got worse then.

"Q. I didn't ask you that. Will you take the stand?

(Witness resumed stand.)

"Q. Which foot slipped, Mr. Wideman?

"A. The left.

"Q. The left foot?

"A. The left foot.

"Q. How far did it slip, if you recall? Could you give us an idea?

"A. I'd say maybe two or three inches.

"Q. Was it two or three inches forward, to the side, to the left, or how?

"A. To the side—just as I stepped toward the sand pile, it slipped that way and not towards the side.

"Q. Towards the sand pile?

"A. Yes, sir.

"Q. Did you fall down?

"A. I didn't fall down.

"Q. At that time what else happened, as you say you got

this stitch in your back, if you recall? What else happened immediately after that?

"A. After I got the catch in my back?

"Q. Yes.

"A. I let the shovel go. I couldn't pick up the sand.

"Q. Mr. Wideman, you had been doing this same work for many years, had you not?

"A. Many years, that's right.

"Q. You cut sand, you shoveled sand for years; isn't that true?

"A. That's true.

"Q. Isn't that sand sifted that you put into these molds, sir? Isn't it sifted before you put the sand into the molds?

"A. I riddle it before I put it in the mold.

"Q. And when you riddle sand, Mr. Wideman, you remove these extraneous particles of stone and hard dirt, do you not?

"A. That's right.

"Q. And it so occurred on this particular occasion that there was something under your foot; is that correct?

"A. That's correct.

"Q. What was that, if you know?

"A. Little pebbles of iron.

"Q. Little pebbles of iron?

"A. Of iron.

"Q. Do you do that frequently, step on pebbles of iron while you are shoveling?

"A. Yes, once in a while.

"Q. So that this particular thing you were doing was nothing out of the ordinary?

"A. Nothing out of the ordinary.

"Q. Nothing out of the ordinary. It was just what you were doing every day in your work?"

Is this an injury within the meaning of the Workmen's Compensation Act?

"The term 'injury' as used in the Ohio Workmen's Compensation Act, comprehends a physical or traumatic damage or harm accidental in character and as the result of external and accidental means in the sense of being the result of a sudden mishap, occurring by chance, unexpectedly and not in the

usual course of events, at a particular time and place." *Dripps v. Industrial Commission*, 165 Ohio St., 407, 60 Ohio Opinions, 55 (1956).

Applying the doctrine of the *Dripps case* to the above factual situation, we can find no error in the trial court's action in directing a verdict for the appellees.

In *Hamden Lodge v. Gas Company*, 127 Ohio St., 469, 189 N. E., 246 (1934), the Supreme Court held in abolishing the 'scintilla rule.' "Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, * * * reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him."

In this case, reasonable minds must arrive at the same conclusion as the trial judge. The judgment of the trial court is affirmed.

Judgment affirmed.

RADCLIFF, P. J., COLLIER and BROWN, JJ., concur.